FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

SEP 2 4 2012

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

IN RE:                                 §
                                       §        CAUSE NO. A-11-CV-722-LY
ERIC BENJAMIN ERICKSON,                §        CASE NO. 09-11933
                DEBTOR.                §        CHAPTER 7
                                       §        ADV. PROC. NO. 09-1135
                                       §
ERIC ERICKSON,                         §
                APPELLANT,             §
                                       §
V.                                     §
                                       §
                                       §
WELLS FARGO BANK NA AS                 §
TRUSTEE FOR STRUCTURED ASSETS          §
SECURITIES CORP. AMORTIZING            §
RESIDENTIAL COLLATERAL                 §
MORTGAGE PASS-THROUGH                  §
CERTIFICATES, SERIES 2002-BC8,         §
                APPELLEE,              §
                                       §
V.                                     §
                                       §
                                       §
SIMONS FAMILY TRUST, JORENA            §
BENNETT, GREG HEWITT LAHR AS           §
EXECUTOR OF THE ESTATE OF              §
JORENA BENNETT, AND BROOKS             §
BENNETT NORDENBERG,                    §
                APPELLEES,             §
        THIRD-PARTY DEFENDANTS.        §

---

IN RE:                                 §
                                       §        CAUSE NO. A-11-CV-780-LY
ERIC BENJAMIN ERICKSON,                §        CASE NO. 09-11933
                DEBTOR.                §        CHAPTER 7
                                       §        ADV. PROC. NO. 09-1135
WELLS FARGO BANK NATIONAL              §
ASSOCIATION AS TRUSTEE FOR             §
STRUCTURED ASSETS SECURITIES           §
CORPORATION AMORTIZING                 §
RESIDENTIAL COLLATERAL TRUST,          §
MORTGAGE PASS-THROUGH                  §

CERTIFICATES, SERIES 2002-BC8,          §
SIMONS FAMILY TRUST, JORENA             §
BENNETT, BROOKS BENNETT                 §
NORDENBERG,                             §
                      APPELLANTS,       §
                                        §
V.                                      §
                                        §
ERIC ERICKSON,                          §
                      APPELLEE.         §

---

IN RE:                                  §
                                        §
ERIC BENJAMIN ERICKSON,                 §     CAUSE NO. A-11-CV-781-LY
                      DEBTOR.           §     CASE NO. 09-11933
                                        §     CHAPTER 7
WELLS FARGO BANK NATIONAL               §     ADV. PROC. NO. 09-1135
ASSOCIATION, AS TRUSTEE FOR             §
STRUCTURED ASSETS SECURITIES            §
CORPORATION, AMORTIZING                 §
RESIDENTIAL COLLATERAL TRUST,           §
MORTGAGE PASS-THROUGH                   §
CERTIFICATES, SERIES 2002-BC8,          §
                      APPELLANT,        §
                                        §
V.                                      §
                                        §
ERIC ERICKSON, SIMONS FAMILY            §
TRUST, GREG HEWITT LAHR AS              §
EXECUTOR OF THE ESTATE OF               §
JORENA BENNETT, DECEASED, AND           §
BROOKS BENNETT NORDENBERG,              §
                      APPELLEES.        §

## MEMORANDUM OPINION AND ORDER

Before the court are the above styled and numbered related bankruptcy appeals. Appellant

Eric Erickson, a Chapter 7 debtor, appeals from the bankruptcy court's May 19, 2011 Amended

Judgment ordering that Erickson take nothing in his adversary proceeding against Wells Fargo Bank,

N.A., as Trustee for Structured Assets Securities Corporation, Amortizing Residential Collateral

Trust, Mortgage Pass-Through Certificates, Series 2002-BC8 ("Wells Fargo") (Bankr. Clerk's Doc. No. 76). Wells Fargo appeals the bankruptcy court's July 13, 2011 Order Granting Plaintiff's Motion for Extension of Time to File Notice of Appeal (Bankr. Clerk's Doc. No. 100) and July 22, 2011 Memorandum Opinion on Defendant's Post-Trial Motion for Award of Attorneys' Fees (Bankr. Clerk's Doc. No. 105).

This court ordered the parties to file combined briefing and set one oral argument for the three separately docketed appeals (Clerk's Doc. No. 12). The parties submitted briefing, and on January 13, 2012, the court held oral argument on the appeals. Having considered the parties' briefing and arguments, the bankruptcy court's orders, the record before the bankruptcy court, and the applicable law, the court is of the opinion that the bankruptcy court did not abuse its discretion in extending time for Erickson to file a notice of appeal. With respect to the merits of Erickson's appeal, the bankruptcy court did not err in finding the home-equity lien held by Wells Fargo valid and enforceable, in granting Wells Fargo an order of sale for judicial foreclosure, or in finding in favor of Simons Family Trust, Jorena Bennett, and Brooks Bennett Nordenberg on their claim of fraud. Finally, the court concludes that the bankruptcy court abused its discretion in denying Wells Fargo's motion for attorney's fees.

## I. BACKGROUND

This adversary proceeding arises from a home-equity note Erickson executed on February 3, 2000, in favor of Option One Mortgage Corporation ("Option One") in the amount of $320,000, secured by a deed of trust on property at 1406 Circle Ridge Drive, Westlake Hills, Texas, 78746 ("the Circle Ridge Property"). To obtain the loan, Erickson signed an affidavit attesting that the acreage used to secure the loan was his homestead. Erickson later subdivided the property into

several lots. He then obtained additional loans secured by the property based on affidavits swearing the property was not his homestead: a second loan in February 2000 in the amount of $400,000 from the Margaret Piper Herman Trust and CA Holdings LLC, and a third loan in the amount of $200,000 from Oliver Pierson and the Simons Family Trust in May 2001.

On August 9, 2002, Erickson obtained a second home-equity loan from Option One, in the amount of $931,000, to refinance the then existing three loans secured by the property. The new loan was secured by a deed of trust encumbering a portion of the new subdivided property, designated Lot 1. To obtain the loan, Erickson swore the lot was his homestead. The proceeds of the loan were used to discharge the existing liens against the property.

Erickson later obtained three more loans secured by deeds of trust on Lot 1: (1) on September 1, 2003, Erickson borrowed $203,000 from the Simons Family Trust; (2) on November 1, 2003, he borrowed $20,000 from Jorena Bennett; and (3) on January 15, 2004, he borrowed an additional $40,000 from Jorena Bennett. To obtain each of these loans, Erickson swore that Lot 1 was not his homestead and asserted that he resided at 2002 Arthur Lane, Austin, Texas 78704, his mother's address.

Erickson defaulted on the $931,000 home-equity loan in 2005, and Wells Fargo—the current holder of the note and beneficiary of the deed of trust securing the note—commenced foreclosure proceedings. Erickson filed suit in the 250th District Court in Travis County against Wells Fargo, seeking a declaratory judgment that the 2002 home-equity loan was invalid under the Texas Constitution and that Wells Fargo lacked authority to foreclose. On December 11, 2007, the state court disposed of some of Erickson's claims by summary judgment. While Erickson's remaining claims were still pending, he filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code.

Erickson then removed the state-court action to the bankruptcy court as an adversary proceeding. After removal, Erickson filed an amended complaint before the bankruptcy court, reiterating his challenges to the constitutionality of the 2002 home-equity loan and Wells Fargo's authority to foreclose and alleging that the 2003 and 2004 liens on his homestead were unconstitutional.

Wells Fargo counterclaimed against Erickson, requesting judicial foreclosure of its lien or, in the alternative, a judgment that the principal and interest of its loan should be forfeited. Wells Fargo also filed a claim against the Simons Family Trust, Jorena Bennett, and Brooks Bennett Nordenberg, seeking judgment that their liens were subordinate and inferior to its own. The Trust, Bennett, and Nordenberg counterclaimed against Erickson, asserting claims for breach of contract and fraud, due to Erickson's default on their notes and his misrepresentations regarding the property's homestead status.

Erickson moved for summary judgment. The bankruptcy court denied the motion, and the parties proceeded to trial. The bankruptcy court rendered a memorandum opinion on the merits of the parties' claims on April 27, 2011, and a final judgment on April 28, 2011. The court's amended judgment of May 19, 2011, from which Erickson appeals, (1) ordered that Erickson take nothing on his complaint for declaratory judgment; (2) affirmed Wells Fargo's status as beneficiary of the deed of trust securing the 2002 home-equity loan; (3) decreed the 2002 home-equity lien valid and enforceable; (4) granted judgment for Wells Fargo in the amount of $1,618,263.87 plus interest; (5) lifted the automatic stay imposed by the bankruptcy code; (6) granted Wells Fargo "an order of sale for judicial foreclosure"; (7) decreed that all claims of the Simons Family Trust, Bennett, and Nordenberg are subordinate and inferior to Wells Fargo's lien; (8) granted a judgment in favor of the Simons Family Trust, Bennett, and Nordenberg on their claim of fraud; and (9) denied the

Simons Family Trust, Bennett, and Nordenberg's claim for breach of contract.

After the bankruptcy court extended Erickson's time to file a notice of appeal, Erickson appealed to this court. Wells Fargo's two separately docketed appeals challenge the bankruptcy court's orders extending Erickson's time to file a notice of appeal and denying Wells Fargo's Post-Trial Motion for Award of Attorneys' Fees.

## II.  LEGAL STANDARD

The district court has jurisdiction over a bankruptcy appeal. 28 U.S.C. § 158.  In reviewing the findings of the bankruptcy court, the district court acts in an appellate capacity. *In re Perry*, 345 F.3d 303, 308–09 (5th Cir. 2003).  The bankruptcy court's conclusions of law are reviewed *de novo*. *Id.* at 309.  However, a finding of fact may only be disregarded upon a showing of clear error. *Id.*; *see also* FED. R. BANKR. P. 8013.  A finding of fact is clearly erroneous when, even in the presence of evidence to support it, the district court is left with a "definite and firm conviction" that the bankruptcy court has made an error. *In re Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005).  "As long as there are two permissible views of the evidence, [a court] will not find the factfinder's choice between competing views to be clearly erroneous." *In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005) (internal citation omitted).

## III.  ANALYSIS

### A.      *Extension of Time to File Notice of Appeal*

The bankruptcy court's decision to grant or deny a motion for extension of time within which to file a notice of appeal is reviewed for abuse of discretion. *See Baker v. Raulie*, 879 F.2d 1396, 1399 (6th Cir. 1989).  The bankruptcy court abuses its discretion when its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence. *See In re*

*Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008).

Wells Fargo argues that the bankruptcy court did not have discretion to grant Erickson an extension of time to file a notice of appeal, because the bankruptcy rules expressly prohibit such an extension where the order or judgment being appealed grants relief from an automatic stay under section 362.[1] *See* FED. R. BANK. P. 8002(c)(1)(A) ("The bankruptcy judge may extend the time for filing the notice of appeal by any party, unless the judgment, order, or decree appealed from grants relief from an automatic stay under § 362 . . . ."). Erickson responds that the May 19, 2011 Amended Judgment could not have granted relief from an automatic stay because the stay automatically terminated when he was discharged in bankruptcy on February 9, 2010. *See* 11 U.S.C. § 362(c)(2).

The bankruptcy court's amended judgment states that "the automatic stay in Plaintiff's Chapter 7 case shall be lifted and Defendant Wells Fargo is granted an order of sale for judicial foreclosure," and the bankruptcy court's statements at the hearing on Erickson's motion for extension of time to file an appeal further demonstrate that the bankruptcy court believed the stay to be in effect at the time it rendered its amended final judgment. The bankruptcy court explained that it intended the automatic stay to remain in effect after Erickson's bankruptcy discharge to allow "Erickson his ability to contest the validity of the lender's deed of trust and its ability to foreclose on the property."

However, the stay had automatically terminated at the time of Erickson's discharge. 11 U.S.C. § 362(c)(2) ("[T]he stay of any other act under subsection (a) of this section continues until

---

[1]Under the Bankruptcy Code, a bankruptcy filing gives rise to an automatic stay of a broad range of enumerated acts against the debtor or the debtor's property. 11 U.S.C. § 362.

the earliest of—(A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual . . . , the time a discharge is granted or denied.").  The stay provided in section 362 is "dependent upon the operation of the bankruptcy law, and that law [is] pertinent only because of the existence of the proceeding in bankruptcy." *In re Income Prop. Builders, Inc.*, 699 F.2d 963, 964 (9th Cir. 1982).  Accordingly, once the debtor is discharged, the bankruptcy court no longer has power or jurisdiction to order the continuation of the automatic stay. *Cf. id.*; *In re Solar Equip. Corp.*, 19 B.R. 1010 (D.C. La. 1982). *See also* 3 COLLIER ON BANKRUPTCY ¶ 362.06, at 362-96 (16th ed. 2011) ("Once the case is closed or dismissed, there is no reason to continue the protection fo the stay.  Indeed, the court retains no further jurisdiction to reinstate or continue the stay.").

The court rejects Wells Fargo's argument that the bankruptcy court's January 8, 2010 denial of Wells Fargo's motion for relief from the automatic stay somehow continued the stay beyond Erickson's discharge.  The two-paragraph January 8, 2010 order merely states that the bankruptcy court "is of the opinion that the automatic stay of 11 U.S.C. § 362 shall remain in effect."  The bankruptcy court rendered the order before Erickson's discharge in bankruptcy, and the order does not state a date until which the stay shall remain in effect.  Nothing in the order suggests that the bankruptcy court intended to continue the stay past Erickson's discharge.  Moreover, even if the bankruptcy court had expressly stated in the order that the stay was to remain in effect until the adversary proceeding was completed, such an order would have been without effect once Erickson received his discharge and the stay automatically terminated under the Bankruptcy Code.  The bankruptcy court discharged Erickson on February 9, 2010, and closed the bankruptcy on February 10, 2010.  Thus, the court holds that the automatic stay, which arose from the filing of Erickson's

petition, terminated on February 9, 2010. *See* 11 U.S.C. § 362(c)(2)(C).

Because the court holds that the automatic stay terminated at Erickson's discharge on February 9, 2010, the bankruptcy court's amended judgment did not lift the stay. Rule 8002(c)(1)(A), therefore, does not bar Erickson's seeking an extension of time to file a notice of appeal, and the general provisions governing extensions of time to file a notice of appeal apply to Erickson's request.[2] *See* FED. R. BANK. P. 8002(c)(2) (party must move no later than 21 days after expiration of time for filing a notice of appeal). Erickson timely moved for an extension of time to appeal the bankruptcy court's May 19, 2011 Amended Judgment on June 10, 2011.[3]

The bankruptcy court had discretion to extend the time for Erickson to file his appeal upon a showing by Erickson of excusable neglect. *Id.* Erickson's motion for extension of time to file a notice of appeal represented that the wife of Erickson's attorney suffered serious injuries and had surgery in May 2011 and that, as a result, the attorney—a solo practitioner—was absent from his law office and his staff miscalendared the deadline for filing the notice of appeal. The bankruptcy court accepted the explanation and found excusable neglect. Wells Fargo does not challenge the substantive basis of the bankruptcy court's finding. Accordingly, because Rule 8002(c)(1)(A) does

---

[2]This conclusion renders moot Wells Fargo's second argument in this appeal: that the bankruptcy court erred in relying on its general statutory power to "issue any order, process, or judgment" to override Rule 8002(c)(1)(A) and grant Erickson an extension of time. *See* 11 U.S.C. § 105 ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

[3]In his brief to this court, Erickson raises the argument that the June 7, 2011 notice of appeal was in fact timely, because the May 19, 2011 order was not mailed until May 21, 2011, and was not received until May 25, 2011. Erickson further argues that because his attorney was not an e-filer on May 21, 2011, his notice of appeal was not due until June 8, 2011. *See* FED. R. CIV. P. 6(d); FED. R. BANKR. P. 9006(f). This argument is without merit, as the time for filing a notice of appeal from a bankruptcy-court judgment runs not from the date of service but from the date of entry of the judgment, order, or decree appealed from. FED. R. BANKR. P. 8002(a).

not govern this case, the bankruptcy court did not abuse its discretion in extending the time for Erickson to file a notice of appeal. Because Erickson timely filed an amended notice of appeal, this court has jurisdiction over Erickson's appeal.

**B.      *Erickson's Appeal***

Erickson appeals the bankruptcy court's May 19, 2011 Amended Judgment. Erickson raises three primary arguments: (1) the bankruptcy court erred in finding the 2002 home-equity lien valid and enforceable; (2) the bankruptcy court erred in concluding that Wells Fargo was entitled to equitable subrogation in the event the home-equity loan was invalid; and (3) the bankruptcy court erred in finding Erickson defrauded the Simons Family Trust, Bennett, and Nordenberg.[4]

**1.      Validity of 2002 Home-Equity Loan**

This proceeding began as a prepetition state-court action seeking a declaratory judgment that Erickson's 2002 home-equity loan is invalid under the Texas Constitution's home-equity-loan rules. *See* TEX. CONST., art. XVI, § 50 (effective Nov. 6, 2001 to Sept. 12, 2003).[5] If a lien that is not constitutionally permitted is placed on property that has not lost its homestead character, the lien on the property is void. *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129–30 (Tex. 1991). Erickson raises four constitutional challenges to the 2002 loan, each of which, he argues, invalidates the loan and prevents Wells Fargo from foreclosing.

_____

[4]Although in his Amended Notice of Appeal, Erickson identifies the issues on appeal to include whether the bankruptcy court erred in denying his motion for leave to file a fifth-amended complaint, Erickson does not include the issue in his statement of issues presented in his Appellant's Brief. Nor does he address this argument substantively therein. Accordingly, this court deems this issue waived. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

[5]The parties agree that the pre-2003 provisions of the Texas Constitution govern Erickson's 2002 home-equity loan.

a.      Authority of Wells Fargo to Foreclose

The Texas Constitution requires that a home-equity loan be "secured by a lien that may be foreclosed upon only by a court order." TEX. CONST., art. XVI, § 50(a)(6)(D). Erickson argues that the deed of trust securing his loan violates this constitutional provision because it does not expressly grant the beneficiary a right of judicial foreclosure, and paragraph 24 of the deed of trust "prohibits foreclosing by suit." This argument is without merit.

Under Texas law, a mortgagee may either sell property by nonjudicial foreclosure pursuant to express powers granted in a deed of trust or bring a judicial-foreclosure action. *See* TEX. PROP. CODE § 51.002(a) (describing procedures for nonjudicial foreclosure under power of sale conferred by deed of trust); TEX. BUS. & COM. CODE § 9.601 (providing that secured party may "reduce a claim to judgment, foreclose, or otherwise enforce the claim [or] security interest . . . by any available judicial procedure"); TEX. R. CIV. P. 735 ("A party seeking to foreclose a . . . home equity loan . . . may file . . . a suit seeking judicial foreclosure."); *see also Thurman v. F.D.I.C.*, 889 F.2d 1441, 1445 (5th Cir. 1989) ("Judicial foreclosure and foreclosure under the power of sale in a deed of trust are remedies which cannot be concurrently prosecuted.") (citing *Kaspar v. Keller*, 466 S.W.2d 326, 329 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.)).

Although the right to pursue nonjudicial foreclosure arises from the parties' contract, judicial foreclosure is a judicial remedy independent of that contract. *Compare Mountain Townsite Co. v. Cooper*, 73 S.W.2d 90, 91 (Tex. 1934) ("The right of sale under trust deed is a valuable one, given by contract, and cannot be impaired by any subsequent act of the mortgagor.") *with Garza v. Allied Fin. Co.*, 566 S.W.2d 57, 62 (Tex. Civ. App.—Corpus Christi 1978, no writ) ("Judicial foreclosure, however, is an additional remedy to that of seeking a personal judgment against the debtor."). The

deed of trust need not contain an express provision granting a right to judicial foreclosure for Wells Fargo to have the authority to pursue the remedy.

Nor does the deed of trust prohibit judicial foreclosure, as argued by Erickson. Paragraph 24 is entitled "Substitute Trustee," and provides, *inter alia*: "Nothing within this Security Instrument shall be deemed to authorize the Trustee or substitute trustee herein to act on behalf of the Borrower in any judicial proceeding . . . ." This provision places limitations on the trustee, not the lender. Accordingly, nothing in the deed of trust violates the constitutional requirement that a home-equity loan be "secured by a lien that may be foreclosed upon only by a court order." *See* TEX. CONST. art. XVI, § 50(a)(6)(D).

      b.    <u>Personal Liability of Erickson</u>

The Texas Constitution requires that a home-equity loan be "without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud." TEX. CONST. art. XVI, § 50(a)(6)(C). Erickson argues that the deed of trust violates this provision by making him personally liable for amounts accruing under the loan. Again, Erickson first raised this challenge in his motion for summary judgment before the bankruptcy court. The bankruptcy court did not reach the merits of this challenge, because it was not raised in Erickson's fourth-amended complaint, his last live pleading. Therefore, the bankruptcy court ruled that the challenge had been waived, was procedurally untimely, and was barred by the four-year statute of limitations.

On appeal, Erickson argues only that this court should rule on the merits of his challenge. A district court generally will not reach the merits of an issue not considered by the bankruptcy court, and this court declines to rule on the merits of this challenge for the first time on appeal. *Cf. Baker*

*v. Bell*, 630 F.2d 1046, 1055 (5th Cir. 1980) ("Generally, this court will not reach the merits of an issue not considered by the district court."). This court notes, however, that even if there were merit to Erickson's claim, Wells Fargo provided Erickson with timely written notice that it was waiving and renouncing any right or claim to pursue personal recourse against him with respect to any obligations arising under the deed of trust. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x) (providing lenders with right to cure noncompliance with constitutional requirements, thereby validating lien); *see also Doody v. Ameriquest Mortg. Co.*, 49 S.W.3d 342, 346 (Tex. 2001).

     c.    Prior Liens

Erickson raises two constitutional challenges with respect to the prior liens on his property that were paid off from the proceeds of the 2002 home-equity loan. The Texas Constitution requires that a home-equity loan be "the only debt secured by the homestead at the time the extension of credit is made unless the other debt was made for a purpose described by Subsections (a)(1)-(a)(5) or Subsection (a)(8) of this section."[6] TEX. CONST. art. XVI, § 50(A)(6)(K). Erickson argues that at the time of the 2002 extension of credit, there were liens on his property that were not given for any purposes authorized by the specified subsections and that these liens had to be paid off *before* a new lien on his homestead could be executed.

The purpose of section 50(a)(6)(K) is to prevent multiple home-equity loans at the same time on the same property. REGULATORY COMMENTARY ON EQUITY LENDING PROCEDURES, at 7 (Oct. 7, 1998). This commentary is advisory on issues regarding Texas home-equity loans. *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 357 (Tex. 2000). The proceeds of the 2002 home-equity

---

[6]Subsections (a)(1)–(a)(5) describe traditionally permitted liens on a Texas homestead: purchase money, taxes, owelty, refinance, and improvements.

loan were used to pay off the first home-equity loan on the property in the amount of $316,308.88, as well as the second and third loans from various lenders in the amount of $714,587.38. Therefore, all existing debt secured by the property were extinguished by the proceeds of the 2002 home-equity loan. Accordingly, the 2002 loan was "the only debt secured by the homestead at the time the extension of credit [was] made," and there was no violation of section 50(a)(6)(K).

Moreover, if the court were to adopt Erickson's reading of section 50(a)(6)(K), it would render other parts of the home-equity rules void. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(i) (requiring that home-equity loan be made on condition that "the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt *except* debt secured by the homestead or debt to another lender") (emphasis added). Section 50(a)(6)(Q)(i) plainly authorizes what Erickson argues section 50(a)(6)(K) forbids.

Erickson's second constitutional challenge with respect to the prior liens is predicated on a finding that these liens are void, because they constitute additional and therefore unlawful liens on his homestead. Because the liens are invalid, Erickson argues, the use of the proceeds of the 2002 home-equity loan to satisfy the debt the liens secured violates the Texas Constitution. The constitution requires the owner to apply proceeds to repay any debt "except debt secured by the homestead or debt to another lender." TEX. CONST. art. XVI, § 50(a)(6)(Q)(i). The bankruptcy court rejected this argument, holding that Erickson was estopped from challenging the validity of the second and third liens, because of the multiple nonhomestead affidavits he gave to the lenders making the loans. On appeal, Erickson argues the bankruptcy court erred in applying estoppel to his constitutional challenge.

To invoke equitable estoppel, a party must prove: (1) a false representation or concealment

14

of material fact; (2) made with knowledge, actual or constructive, of the facts; (3) to a party without knowledge or the means of knowledge of the real facts; (4) with the intention that it should be acted upon; and (5) the party to whom it was made must have relied upon or acted upon it to his prejudice. *Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (1952). Erickson does not dispute the bankruptcy court's finding that he made a knowingly false representation of fact with the intent that it should be acted upon when he signed false affidavits concerning the property's nonhomestead status. He disputes only the fifth element of reliance, arguing that the lenders behind the second and third liens, Option One, and Wells Fargo knew or had reason to know that the nonhomestead affidavits were false and that there was no evidence that they relied upon the affidavits when making or purchasing their respective loans.

Because Erickson's appeal contests the validity of the 2002 home-equity loan currently held by Wells Fargo, it is Wells Fargo's affirmative defense of equitable estoppel that is at issue here. Accordingly, Wells Fargo need only demonstrate that it relied upon Erickson's misrepresentations to its detriment. The reliance of the lenders behind the second and third liens is not at issue.

With respect to Wells Fargo, the bankruptcy court concluded that Wells Fargo was a *bona fide* purchaser of the 2002 note without knowledge of the affidavits' inaccuracy. Article XVI, section 50(d) of the note provides that:

> A purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that designates other property as the homestead of the affiant and that states that the property to be conveyed or encumbered is not the homestead of the affiant.

Additionally, the deed of trust now held by Wells Fargo contains the following contractual subrogation provision in paragraph 25:

> Any of the proceeds of the Note used to take up outstanding liens against all

15

> or any part of the Property have been advanced by Lender at Borrower's
> request and upon Borrower's representation that such amounts are due and
> are secured by valid liens against the Property.

The deed of trust itself provides evidence of reliance by the original lender, Option One, and the

subsequent *bona fide* purchaser of the note, Wells Fargo. The court rejects Erickson's argument that

there is no evidence that Wells Fargo actually relied upon the affidavits in purchasing the note from

Option One. Accordingly, the bankruptcy court did not err in applying equitable estoppel to

Erickson's challenge of the validity of the 2002 home-equity lien based on the defects of the second

and third prior liens.

> d.   Copies of Home-Equity Loan Documents

Erickson's final constitutional challenge to the 2002 home-equity lien is that he did not

receive a copy of all documents signed at closing. The Texas Constitution requires that "at the time

the extension of credit is made, the owner of the homestead shall receive a copy of the final loan

application and all executed documents signed by the owner at closing related to the extension of

credit." TEX. CONST. art. XVI, § 50(a)(6)(Q)(v). Erickson argues that closing occurred over two

days, August 8 and August 9, 2002. Although Erickson admits he received all documents signed on

August 8 and signed an affidavit to that effect, he contends he did not receive any documents signed

on August 9.

The bankruptcy court concluded that Erickson's testimony that the copy machine at the title

company was broken on August 9 was not credible, because of the amount of time that had passed

and the fact that Erickson did not come forward with this story during his deposition prior to trial.

The bankruptcy court also rejected Erickson's testimony that the affidavit he signed at closing,

swearing to his receipt of all documents, was altered without his knowledge to reflect a date of

August 9 instead of August 8. The bankruptcy court instead found that the evidence supported the conclusion that the closing likely occurred on one day, August 9, and that the affidavit was amended to correspond to the correct date.

The bankruptcy court's finding that Erickson received all closing documents is a factual finding that will be disturbed on appeal only by this court's finding of clear error. *See* FED. R. CIV. P. 25(a)(6); *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009). "Under a clear error standard, this court will reverse only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* (internal quotation omitted). Because the factual finding Erickson challenges rests upon a credibility determination, this court's review is even more circumscribed. *See In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (reviewing courts must give "due regard to opportunity of bankruptcy court to judge the credibility of the witnesses") (internal quotation omitted).

Having considered the transcript of the January 28, 2011 trial and record on appeal, the court finds no clear error. The only witness at trial who testified that the closing occurred over two days was Erickson. The closing agent for the 2002 home-equity loan could not recall any details about the closing to corroborate Erickson's testimony. Erickson himself also struggled to recollect significant facts to support his claim, such as which documents he executed on August 8 versus August 9 so as to identify the documents he alleges were not provided to him. The burden is on Erickson, as appellant, to show that a finding of fact made by the bankruptcy court is clearly in error. *See Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993). Erickson has not directed the court to any evidence that calls into question the bankruptcy court's finding. In light of Erickson's and the closing agent's difficulty remembering the details of the closing and in deference

to the bankruptcy court's credibility determinations, this court finds no clear error.

Because this court concludes that none of Erickson's constitutional challenges to the validity of the 2002 home-equity lien have merit, this court will affirm the bankruptcy court's May 19, 2011 Amended Judgment finding the 2002 Option One home-equity lien and related loan documents valid and enforceable and granting Wells Fargo judicial foreclosure. Accordingly, this court need not reach Erickson's second argument on appeal: that the bankruptcy court erred in granting Wells Fargo equitable subrogation rights during summary-judgment proceedings. Wells Fargo only requested subrogation as an alternative means of relief in the event that the bankruptcy court were to determine that the 2002 home-equity loan violated the Texas Constitution. *See LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616 (Tex. 2007) (recognizing lienholder's common-law right to equitable subrogation to preserve lien rights on homestead property).

### 2.     Fraud Judgment for Appellees the Simons Family Trust, Bennett, and Nordenberg

Erickson's final argument on appeal is that the bankruptcy court erred in finding in favor of the Simons Family Trust, Bennett, and Nordenberg on their claim of fraud. Fraud requires a showing that (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false and made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). The bankruptcy court found that Erickson made false representations regarding the nonhomestead status of his property with knowledge that he would not have been able to obtain the additional 2003 and 2004 liens on his homestead if he had given truthful answers about

18

the property's nature. The bankruptcy court further found that these misrepresentations induced the Trust, Bennett, and Nordenberg to loan Erickson money.

Erickson argues that the Simons Family Trust, Bennett, and Nordenberg could not have relied on his false affidavits, because Greg Lahr served as their agent and had knowledge of the affidavits' falsity. The bankruptcy court considered and rejected this argument, finding that Erickson failed to meet his burden to show that Lahr knew the property was Erickson's homestead and there was an agency relationship between Lahr and the lenders.

The bankruptcy court's finding that there was insufficient evidence that Lahr knew the true nature of Erickson's property is a factual finding that may only be overturned with a finding of clear error. *See In re Morrison*, 555 F.3d at 480. Having considered the trial record, this court is not left with the "firm and definite conviction" that Lahr knew the property was Erickson's homestead. *See id.* The only person to testify that Lahr knew the Circle Ridge property was Erickson's homestead at the time Erickson signed the nonhomestead affidavits was Erickson. And even this testimony was ambiguous, as Erickson's statement at trial was that Lahr *believed* the property not to be Erickson's homestead on the basis that Erickson was temporarily living elsewhere while he completed home renovations. The bankruptcy court concluded that Erickson was not a credible witnesses, as he admitted to making false statements under oath about his property.

The only other witness was Allen Craig, the closing agent for the loans. Craig testified that he told Lahr that Erickson believed the property to be his homestead. However, Craig could not recall the details of this conversation or whether this conversation took place in 2001, 2002, 2003, or 2004. The bankruptcy court concluded that Craig was not a credible witness, because Craig was a convicted felon who had been disbarred from the practice of law. The bankruptcy court also noted

that Craig's recollection of details during his testimony were often "confused and fading." Lahr did

not testify at trial.

Again, Erickson, as appellant, bears the burden to demonstrate that a factual finding was

made in clear error. *See In re Dennis*, 330 F.3d at 701; *In re Musslewhite*, 270 B.R. at 77. Erickson

has presented the court with no basis for overturning the bankruptcy court's factual finding other

than reiterating the testimony of Erickson and Craig that the bankruptcy court found incredible. In

light of Craig's difficulty recollecting the details of his conversation with Lahr and the self-serving

nature of Erickson's testimony, this court finds no clear error. *See In re Morrison*, 555 F.3d at 480.

Finally, the bankruptcy court did not err in holding that Erickson failed to adduce sufficient

evidence of an agency relationship between Lahr and the Simons Family Trust, Bennett, and

Nordenberg. Erickson argues that the "undisputed evidence is that Greg Lahr served as agent for

[these lenders]," because the evidence showed that Lahr negotiated and approved the loans without

seeking permission or approval from the lenders or their attorneys. Erickson further argues that the

Trust, Bennett, or Nordenberg "could have testified [Lahr] was not their agent but did not." Erickson

misstates the burden of proof on this issue. Because Erickson raises agency as an affirmative defense

to the lenders' claim of fraud, Erickson, not the lenders, bore the burden of proof on the issue. *See*

*IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) (law does not presume agency, and party

asserting agency has burden to prove it).

"An agent is one authorized by another to transact some business for the principal; the

relationship is a consensual one between two parties, by which one party acts on behalf of the other,

subject to the other's control." *Jamison v. Nat'l Loan Investors, L.P.*, 4 S.W.3d 465, 468 (Tex.

App.—Houston [1st Dist.] 1999, pet. denied). "An agent's authority to act on behalf of a principal

depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). The establishment of an agency relationship, whether based on actual or apparent authority, focuses on the words and conduct of the principal, not the agent. *See id.*; *Expro Ams., LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 921 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

The purported principals, the Simons Family Trust, Bennett, and Nordenberg, did not testify at trial, and Erickson's and Craig's testimony focused entirely on the conduct of Lahr. The entirety of Erickson's testimony about Lahr's relationship to these lenders was that Lahr "pooled various investors together" in order to provide loans. Craig testified that he was not sure whether he spoke to Lahr's client-investors directly and that Lahr was "in control of" and responsible for getting the documents needed for closing from the Trust, Bennett, and Nordenberg. The court agrees with the bankruptcy court that this testimony is insufficient as a matter of law to demonstrate an agency relationship between Lahr and the Trust, Bennett, and Nordenberg. Lahr's mere involvement in the real-estate closing did not make him an agent of the lenders absent some evidence that the lenders, by their words or conduct, authorized him to act on their behalf. *See Gaines*, 235 S.W.3d at 182. "It is common knowledge and practice that acting as a closing agent in a loan transaction does not create an agency or employer-employee relationship between the closing agent and the lending institution[,]" where there is "no evidence of any agreement, express or implied" between principal and agent. *United States v. Musgrave*, 444 F.2d 755, 760 (5th Cir. 1971).

Because Erickson has not established that the bankruptcy court erred in finding Erickson failed to prove the Simons Family Trust, Bennett, and Nordenberg had knowledge of the falsity of

Erickson's affidavits, it did not err in finding that the lenders established the requisite elements of fraud. Accordingly, the court will affirm the bankruptcy court's judgment of fraud in favor of the Trust, Bennett, and Nordenberg.

## C.    *Attorney's Fees*

After the bankruptcy court rendered its amended judgment that Erickson take nothing in his adversary proceeding against Wells Fargo, Wells Fargo sought attorney's fees pursuant to section 6(D) of the 2002 home-equity note, which permits the note holder to recover reasonable attorney's fees incurred in enforcing the note.[7] Wells Fargo's motion for attorney's fees requested fees in two allocations: (1) fees incurred before Erickson's filing of his Chapter 7 petition on July 9, 2009, limited to an *in rem* judgment, an additional amount to be secured by the home-equity lien against the property, and (2) fees incurred postpetition, awarded as a personal judgment against Erickson.

The Texas Constitution prohibits personal recourse against the borrower of a home-equity loan absent a showing that the borrower obtained the extension of credit by fraud. TEX. CONST. art. XVI, § 50(a)(6)(C) (requiring that home-equity note be "without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud"). Wells Fargo argued before the bankruptcy court that, although Erickson did not obtain the 2002 home-equity loan through fraud, Erickson demonstrated a lack of intention

---

[7]Section 6(D) of the home-equity note executed between Option One and Erickson provides:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing the Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

to fulfill the terms of the loan he secured from Option One and this conduct constituted fraud for purposes of section 50(a)(6)(C). The bankruptcy court rejected the argument, holding that lack of intention to perform on a contract does not constitute fraud for purposes of section 50(a)(6)(C). Thus, the bankruptcy court held that section 50(a)(6)(C) prohibited awarding legal fees as a personal judgment against Erickson and denied Wells Fargo's motion.

Wells Fargo does not challenge the bankruptcy court's finding that Erickson did not engage in fraud for purposes of section 50(a)(6)(C). Rather, Wells Fargo argues that even without a finding of fraud, Wells Fargo is entitled to reasonable attorney's fees against Erickson as a prevailing party on a written contract and as a prevailing defendant in Erickson's adversary proceeding under the Texas Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8) ("A person may recover reasonable attorney's fees from an individual or corporation . . . if the claim is for . . . an oral or written contract."); *Id.* § 37.009 (In declaratory-judgment proceeding, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). Wells Fargo concedes that fees incurred prior to Erickson's filing of his bankruptcy petition are discharged as prepetition debts, but argues that there is no restriction against adding these fees to the debt owed on the home-equity loan. Wells Fargo also reiterates its request for an award of postpetition attorney's fees as a personal judgment against Erickson.

This court reviews the bankruptcy court's denial of attorney's fees for an abuse of discretion. *See In re Babcock & Wilcox Co.*, 526 F.3d 824, 826 (5th Cir. 2008). A bankruptcy court abuses its discretion when (1) it applies an improper legal standard or follows improper procedures in calculating the fee award or (2) it rests its decision on findings of fact that are clearly erroneous. *Id.* Having considered the record in this cause, this court is of the opinion that the bankruptcy court

should have considered whether Wells Fargo is entitled to reasonable attorney's fees as an *in rem* judgment to be recovered through judicial foreclosure on the Circle Ridge property.

The bankruptcy court was correct that section 50(a)(6)(C)'s prohibition on personal judgments against home-equity borrowers bars the recovery legal fees as a personal judgment against Erickson. *See In re Mullins*, 433 B.R. 1, 18 (S.D. Tex. 2010). Therefore, regardless of whether Wells Fargo has a right to attorney's fees by the loan contract or by statute, this right cannot trump the Texas Constitution. Accordingly, Wells Fargo may only recover its attorney's fees and costs against the property, not Erickson personally. *See id.* at 17. The bankruptcy court denied Wells Fargo's motion in its entirety based on the unavailability of a personal judgment against Erickson, without consideration of an *in rem* judgment. "[E]ven though Wells Fargo may not seek to recover its attorneys' fees and costs from [Erickson] in [his] individual capacit[y], Wells Fargo may nevertheless add the fees and costs to the balance owed under the [2002 home-equity note], and then recover the entire balance through foreclosure on the Property." *Id.* at 18.

Accordingly, this court will reverse the bankruptcy court's July 22, 2011 order denying attorney's fees to Wells Fargo and remand with instructions that the bankruptcy court consider whether Wells Fargo should recover reasonable attorney's fees as an *in rem* judgment to be recovered through judicial foreclosure on the Circle Ridge property.

## IV. CONCLUSION

In summary, this court holds that the bankruptcy court did not abuse its discretion in extending the time for Erickson to file a notice of appeal. After reviewing the merits of Erickson's appeal, this courts finds no error in the bankruptcy court's factual findings and legal conclusions with respect to the validity of Erickson's 2002 home-equity note, the right of Wells Fargo to pursue

judicial foreclosure, and the Simons Family Trust, Bennett, and Nordenberg's judgment against Erickson for fraud.  Finally, this court holds that the bankruptcy court should have considered whether Wells Fargo is entitled to recover reasonable attorney's fees as an *in rem* judgment. Therefore, the court will reverse the bankruptcy court's order denying attorney's fees and remand with instructions to consider whether Wells Fargo may recover attorney's fees from the proceeds of judicial foreclosure on the Circle Ridge property.

**IT IS THEREFORE ORDERED** that the bankruptcy court's Order Granting Plaintiff's Motion for Extension of Time to File Notice of Appeal, signed July 13, 2011 (Bankr. Clerk's Doc. No. 100) is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the bankruptcy court's Amended Judgment, signed May 19, 2011 (Bankr. Clerk's Doc. No. 76) is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the bankruptcy court's Memorandum Opinion on Defendant's Post-Trial Motion for Award of Attorneys' Fees, signed July 22, 2011 (Bankr. Clerk's Doc. No. 105) is **REVERSED AND REMANDED** to the bankruptcy court for further proceedings consistent with this opinion.

SIGNED this 24th day of September, 2012.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE